# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SLOAN VALVE COMPANY, a Delaware Corporation, and DOES 1-30, inclusive,<br><br>Defendants.<br><br>SLOAN VALVE COMPANY, a Delaware Corporation,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>CMS FACILITIES MAINTENANCE, INC., a Colorado Corporation, and MOES 1-50, inclusive,<br><br>Third-Party Defendants. | Case No.: 2:10-cv-01816-RLH-LRL<br><br>**O R D E R**<br><br>(Motion to Dismiss–#29;<br>Motion for Partial<br>Summary Judgment–#36;<br>Motion for Hearing–#47) |

Before the Court are three motions: Third-party Defendant CMS Facilities Maintenance, Inc.'s ("CMS Facilities") **Motion to Dismiss** (#29, filed May 11, 2011) based on failure to state a claim; CMS Facilities' **Motion for Hearing** (#36, filed June 13); and

Defendant/Third-party Plaintiff Sloan Valve Company's ("Sloan") **Motion for Partial Summary Judgment** (#29, filed May 11). The Court has also considered the various oppositions and replies to the motions.

## BACKGROUND

This dispute arises out of damage caused by an allegedly defective Sloan flush valve (the "Flush Valve") at a vacant commercial building owned by Harsch Investment Properties in Las Vegas, Nevada (the "Harsch Building"). In January 2009, the Flush Valve failed and caused a leak. As the building was unoccupied (Harsch was seeking to rent it out), the leak apparently continued for some time and caused a significant amount of damage to the building. Fireman's Fund, Harsch's insurer, paid Harsch under its insurance policy for repairs and now brings this suit as Harsch's subrogee. Specifically, Fireman's Fund alleges claims for: (1) strict products liability, (2) negligence, (3) breach of implied warranty, and (4) strict products liability warning defect. After Fireman's Fund sued Sloan, Sloan sued CMS Facilities Management, Inc., the janitorial company in charge of cleaning and maintaining the Harsch Building, alleging: (1) equitable/implied indemnity, and (2) contribution. After CMS Facilities filed its motion to dismiss, Sloan exercised its right to amend its third-party complaint as of right and filed a First Amended Third-party Complaint, to which the Court will apply CMS Facilities' motion to dismiss. For the reasons discussed below, the Court grants Sloan's motion for partial summary judgment, CMS Facilities' motion to dismiss, and denies the motion for hearing as moot.

## DISCUSSION

The Court will first address Sloan's motion for summary judgment because the determination on the issue of the economic loss doctrine will affect the Court's analysis of CMS Facilities' motion to dismiss.

/

/

/

2

## I. Motion for Partial Summary Judgment

### A. Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

1  "*set forth specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256
2  (emphasis added). The nonmoving party "may not rely on denials in the pleadings but must
3  produce specific evidence, through affidavits or admissible discovery material, to show that the
4  dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do
5  more than simply show that there is some metaphysical doubt as to the material facts." *Bank of*
6  *America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere
7  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."
8  *Anderson*, 477 U.S. at 252.

        In essence, a district court does three things in deciding whether summary judgment is appropriate: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

      **B.**    **Analysis**

        Sloan moves for summary judgment on Fireman's Fund's three tort-based claims, arguing that they are precluded by the economic loss doctrine. The economic loss doctrine "serves to distinguish between tort, or duty-based recovery, and contract, or promise-based recovery, and clarifies that economic losses cannot be recovered under a tort theory." *Calloway v. City of Reno*, 993 P.2d 1259, 1264 (9th Cir. 2000) (superseded by statute on other grounds as stated in *Olson v. Richard*, 89 P.3d 31, 32-33 (Nev. 2004)); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) ("Broadly speaking, Nevada applies the economic loss doctrine to

bar recovery in tort for purely monetary harm in products liability and in negligence cases unrelated to products liability" though not necessarily in all tort actions). In a case such as this, when an integral component of a product (including a building) fails and damages the larger product, only economic loss occurs and, thus, tort recovery is barred. *Id.* at 1269 (precluding tort based recovery where defective housing framing only damaged the house itself and not persons or other property). This leaves the Court with two questions: (1) is the Flush Valve an integrated and integral part of the Harsch Building, and (2) was 'other property' damaged.

### 1. The Flush Valve is an Integral Part of the Building

The Court finds that the Flush Valve was an integrated and integral part of the Harsch Building. In *Calloway*, the Nevada Supreme Court repudiated its prior decision in *Oak Grove Inv. v. Bell & Gossett Co.*, 668 P.2d 1075 (1983), in which it found that leaky plumbing fittings had not caused solely economic losses. 993 P.2d at 1267-68. Specifically, the Court stated as follows:

> Although buildings may involve a more complicated system of "components," we do not discern a meaningful analytical difference between an airplane's engine and a building's heating and plumbing system. Both an airplane's engine and a building's heating and plumbing system are necessary and integrated parts of the greater whole; additionally, both are themselves comprised of smaller components. Consequently, when a heating and plumbing system damages the building as a whole, the building has injured itself and only economic losses have occurred. We therefore disapprove of our dictum in Oak Grove, which stated that the leaky fittings had not caused purely economic losses.

*Calloway*, 993 P.2d at 1268 (also referring to *Nat'l Union Fire Ins. v. Pratt and Whitney*, 815 P.2d 601 (1991)). The only meaningful difference between this case and the guidance in *Calloway* in repudiating *Oak Grove* is that *Calloway* addressed plumbing fittings that were built into the walls

/
/
/
/

5

whereas here, the specific plumbing component[1] is part of a urinal. However, the Court does not find this distinction meaningful.

The simple positioning or location of a component piece of a larger product is not determinative of the question of whether it is an integral component. Here, the Court has reviewed provided portions of the Uniform Plumbing Code which describes flushometer valves as necessary, or integral, components of a buildings water supply system. (Dkt. #48, Reply Ex. C, Uniform Plumbing Code, Chapter 6: Water Supply and Distribution). This conclusion is supported by simple common sense. No modern building can be considered complete or functional without flushing toilets, *i.e.*, flush valves or flushometers are necessary, integrated parts of modern buildings at least as much as doors, *Washington Courte Condo Ass'n-Four v. Washington-Golf Corp.*, 501 N.E.2d 1290, 1294 (Ill. Ct. App. 1986), windows, *Oceanside at Pine Point Condo. Owners Ass'n. v. Peachtree Doors, Inc.*, 659 A.2d 267, 271 (Me. 1995), or plumbing fittings, *Calloway*, 993 P.2d at 1268. Thus, the Court concludes that despite being outside the walls, the Flush Valve at issue here was a necessary and integrated part of the Harsch Building

### 2. No Other Property Was Damaged

As the Flush Valve was merely a component of the Harsch Building as a whole, the Court must now determine whether the Flush Valve's alleged failure damaged 'other property' or merely the building itself. As the Nevada Supreme Court has recognized, "[d]etermining whether part of a structure has caused economic loss or property damage is analytically more difficult than with factory-assembled products . . . [because] buildings generally represent the cooperative work

---

[1] In its response, Fireman's Fund addresses the allegedly defective product as a flush sensor, specifically a Sloan Optima Plus Battery Operated Retro Fit, rather than a flush valve or flushometer. However, the complaint alleges that the *Flush Valve* failed, not a flush sensor. As the allegations in the complaint are addressed against the Flush Valve, discovery was directed at the Flush Valve, and Fireman's Fund provides no explanation or reason for the sudden switch, the Court will not now allow Fireman's Fund to change the subject of this dispute in its response to a motion for summary judgment in an effort to manufacture a question of material fact. Fireman's Fund attempts to change the focus of this dispute from the Flush Valve to the sensor because the sensor was installed years after the building was built, whereas the Flush Valve was part of the original building. (Dkt. 48, Reply Ex. D, Steven Bentley Depo. 15:24-17:9.) Since the Court will not allow this switch, the Court does not reach the question of whether this timing issue is material.

of a variety of parties at different times, and each building may involve unique materials and methods, as well as an original design." *Calloway v. City of Reno*, 993 P.2d 1259, 1267 (Nev. 2000). "Additionally, buildings, because of their long life span, are subject to remodeling and other changes, which may involve additional designs, laborers and materials." *Id.* Here, Fireman's Fund contends that the flooding "damaged carpeting, cabinets, lighting, and a number of tenant improvements . . . ," (Dkt. #43, Response 6:12-13), while only supporting this statement citing an undefined cost list for repairs (*id.*, Ex. 1) and claiming that some of the items on the list that needed repair were tenant improvements and, therefore, other property. Regardless of whether tenant improvements would be considered other property by Nevada courts once integrated into the building (particularly things such as carpeting and lighting), Fireman's Fund has failed to meet its burden of production as this singular document does not set forth specific facts showing that a question of material fact remains. The Court cannot determine from this document what might be other property or integrated parts of the Harsch Building. Rather, at most, it shows that there might be "some metaphysical doubt as to the material facts," *Orr*, 285 F.3d at 783, because maybe something on this list or some sub-category might be considered 'other property' even though there is no actual explanation.

As the Court has determined that the Flush Valve is merely an integrated, component part of the Harsch Building and that Fireman's Fund has failed to meet its burden in showing that a material fact exists as to whether other property was damaged, the Court grants Sloan's motion for partial summary judgment. Now, the Court turns to Third-party Defendant CMS Facilities' motion to dismiss Sloan's Third-Party Complaint.

## II. Motion to Dismiss

### A. Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

AO 72
(Rev. 8/82)

1 | 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949.  Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950.  A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**B.     Analysis**

Sloan pleads two claims against CMS Facilities: (1) equitable/implied indemnity, and (2) contribution.  However, in its response to the motion, Sloan acknowledged that if the Court were to grant Sloan's motion for partial summary judgment, the contribution claim against CMS Facilities should be dismissed. (Dkt. #35, Resp. 8 n. 6.)  Since the Court grants Sloan's motion for partial summary judgment in this order, it also dismisses Sloan's contribution claim as no

/

AO 72
(Rev. 8/82)

underlying tort claims remain on which a contribution claim may be based. Thus, the Court only need address Sloan's indemnity claim.

Sloan's indemnity claim is almost as easily dismissed as the contribution claim. Nevada courts require "some nexus or relationship between [an] indemnitee and indemnitor." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 802 (Nev. 2009). The Nevada Supreme Court "adopted the warning found in *Pender v. Skillcraft Industries, Inc.*, 358 So.2d 45, 47 (Fla. Dist. Ct. App. 1978), that implied indemnification should not be construed as permission to open a floodgate for cross-claims seeking indemnification where there is no connection between the cross-claimant [or third-party plaintiff] and the party from whom indemnification is sought." *Id.* (internal quotations omitted); *see also Scaffidi v. United Nissan*, 4225 F.Supp.2d 1159, 1172 (holding that Nevada law requires "'a preexisting legal relation . . . or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor'" for equitable indemnity to apply) (quoting *Black & Decker (U.S.), Inc. v. Essex Group Inc.*, 775 P.2d 698, 700 (Nev. 1989)). Here there is no allegation of a legal or any other relationship between Sloan and CMS Facilities. The only allegations are that CMS Facilities was hired by Harsch to clean and maintain the Harsch Building, including the bathrooms. This does not represent any type of relationship, legal or otherwise, between Sloan and CMS Facilities. Thus, Sloan may not maintain an indemnity action against CMS Facilities and the Court dismisses the third-party complaint.

Also, as this order resolves CMS Facilities' motion to dismiss, its motion for hearing on the motion to dismiss is denied as moot.

/
/
/
/
/
/

AO 72
(Rev. 8/82)

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Sloan's Motion Partial Summary Judgment (#36) is GRANTED.

IT IS FURTHER ORDERED that CMS Facilities' Motion to Dismiss (#29) is GRANTED.

IT IS FURTHER ORDERED that CMS Facilities' Motion for Hearing (#47) is DENIED as moot.

Dated: November 16, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**